[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12693

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SAWELJIA TYREE FLOYD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:21-cr-00161-RAH-SMD-1

_____

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Saweljia Floyd appeals the denial of his motion to suppress evidence of guns and drugs seized following the execution of a search warrant. He maintains that the affidavit in support of the search warrant failed to establish probable cause and included material misrepresentations and omissions. After careful review, we reject these arguments and affirm the denial of suppression.

## I.

In early 2018, Dustin Holt, a narcotics detective with the Auburn Police Department ("APD"), began investigating Floyd for suspected drug-trafficking activity at a single-family home located at 312 Jones Street, where Floyd's girlfriend resided. Over several months, Holt and other officers surveilled the residence sporadically from several nearby locations, including the parking lot of a church. Holt also used a confidential informant (the "informant") to make controlled buys of cocaine from Floyd at the back door of the residence.

On May 2, 2018, Holt and Jimmy Butler, a sergeant in the APD narcotics division, conducted a controlled buy with the same informant at the residence. At a meeting before the buy, they searched the informant and provided him with $100 in identifiable currency and an electronic monitoring device. The two officers differed on whether the device transmitted both audio and video (Holt), or just audio (Butler), but no recordings exist. After the

officers met with the information, they parked in the nearby church parking lot, where they could observe the back door of the residence using binoculars.

From their position at the church, Holt and Butler observed the informant approach the back door of the residence. They also monitored the informant's activities with the electronic device. Looking through binoculars, they saw Floyd open the back door and then make a hand-to-hand exchange with the informant, who remained outside. Holt stated that he had an unobstructed view of the exchange from the church parking lot, despite the existence of several trees and a building located between the parking lot and the residence. Butler likewise said that he could "clearly see the back of the house" from their location and that he visually identified Floyd. The informant left the residence and immediately met with Holt and Butler at a separate location. There, the informant handed over a substance, which he said he had received from Floyd, and Holt verified through a field test that it was cocaine.

On May 4, 2018, Holt applied for a search warrant at 312 Jones Street. His affidavit in support of the search warrant read, in relevant part, as follows:

> Within the past 72 hours Detective Dustin Holt and Detective Sergeant Jimmy Butler met with a confidential informant, hereinafter referred to as ["informant"], and made a controlled buy of Cocaine, from Floyd at this residence. During this meeting the [informant] and [informant]'s vehicle were searched,

4                    Opinion of the Court                    22-12693

and the [informant] was fitted with an electronic transmitting device and provided with U.S. currency, with pre-recorded serial numbers, to purchase Cocaine with. Detectives then followed the [informant] to 312 Jones Street, Auburn, Alabama and observed the [informant] meeting with Floyd. Detectives also monitored the transaction by visual and audio surveillance. Upon completion of the transaction the [informant] met with detectives and turned the Cocaine over to Detective Dustin Holt's control. Detective Dustin Holt verified the substance to have the presence of Cocaine, by the use of a field test kit. Detectives have utilized [informant]s to make buys, of Cocaine, from Floyd, at 312 Jones Street, Auburn, Alabama in the past.

When Holt and other officers executed the search warrant six days after the controlled buy, on May 8, 2018, they discovered quantities of cocaine, crack cocaine, and methamphetamine, as well as $1,400 in cash, drug paraphernalia, and a firearm. The marked currency used in the exchange was not recovered.

## II.

Following his indictment on five drug and gun crimes[1], Floyd moved to suppress evidence from the search on the ground

---

[1] Floyd was indicted on the following five counts: possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); possession

that the affidavit in support of the search warrant did not establish probable cause and was based on material misrepresentations or omissions. Floyd asserted that the affidavit failed to establish the reliability of the informant or to describe the alleged prior controlled buys, and he suggested that the affidavit fabricated important details about the controlled buy on May 2.

A magistrate judge held an evidentiary hearing and heard testimony from Holt and Butler, who testified about the facts we've described above. The judge also heard from Floyd, who flatly denied selling any drugs from the residence.

The magistrate judge recommended that Floyd's motion to suppress be denied. In the magistrate judge's view, the warrant affidavit established probable cause to search the residence at 312 Jones Street. Despite the deficiencies identified by Floyd, the magistrate judge explained, "Holt's assertions that he witnessed a properly executed controlled buy at the residence establish a fair probability that evidence of a crime would be located at 312 Jones Street." The magistrate judge also rejected Floyd's argument that the affidavit contained material lies or omissions, finding that the officers' testimony was credible.

The district court overruled Floyd's objections and adopted the magistrate judge's findings and recommendations. Not long

---

with intent to distribute crack cocaine, in violation of § 841(a)(1); possession with intent to distribute powder cocaine, in violation of § 841(a)(1); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

after, Floyd pled guilty to two counts—possession with intent to distribute five grams or more of methamphetamine, *see* 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug-trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A)—under a written plea agreement that preserved his right to appeal the denial of the motion to suppress. The district court sentenced Floyd to a total of 240 months of imprisonment, and this appeal followed.

### III.

We review the denial of a motion to suppress as a mixed question of law and fact, reviewing findings of fact, including credibility determinations, for clear error and the application of law to those facts *de novo*. *United States v. White*, 593 F.3d 1199, 1202 (11th Cir. 2010). Similarly, we review *de novo* whether probable cause existed to support a search warrant, although we "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *United States v. Gamory*, 635 F.3d 480, 491 (11th Cir. 2011) (quotation marks omitted).

Search warrants must be supported by probable cause and describe with particularity the place to be searched and the items to be seized. U.S. Const. amend. IV. The task of the magistrate judge issuing a warrant is to make a practical, common-sense decision whether, given all the circumstances set forth in the probable-cause affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing court is simply to ensure that the

magistrate judge had a substantial basis for concluding that probable cause existed. *Id.* at 238–39. In conducting this review, we apply a "realistic and commonsense approach," not a "hypertechnical" one. *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).

A probable-cause affidavit "must provide the magistrate [judge] with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239. Conclusory assertions are insufficient. *Id.* The affidavit must establish with "fresh" information "a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). If an informant is mentioned, the affiant must establish the informant's "veracity" and "basis of knowledge," unless "there is sufficient independent corroboration of an informant's information." *Id.*

Affidavits supporting search warrants are presumptively valid. *Gamory*, 635 F.3d at 490. Yet a defendant can invalidate a warrant by showing that the affiant intentionally or recklessly made material misrepresentations or omissions in the affidavit. *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009); *see Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). The defendant bears the burden of proving that, "absent those misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001).

Here, the district court properly denied Floyd's motion to suppress. The facts set forth in the search-warrant affidavit

provided the issuing "magistrate [judge] with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239. Holt wrote in the affidavit that, in the latest of multiple controlled buys during an investigation of suspected narcotics trafficking at 312 Jones Street, he observed an informant purchase cocaine from Floyd at the back door of the residence on May 2. That information was "fresh," and it established a connection among Floyd, the residence, and cocaine trafficking. *See Martin*, 297 F.3d at 1314. Plus, Holt's personal observations of the controlled buy, conducted according to a set of procedures designed to ensure its reliability, independently corroborated any information received from the informant, making it unnecessary to establish the informant's veracity or basis of knowledge in the affidavit. *See id.*

Floyd does not dispute on appeal that the facts presented in the affidavit provided a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238–39. Instead, he maintains that the validity of the warrant is fatally undermined by two misrepresentations or omissions. We disagree.

First, he takes issue with the statement in the affidavit that "[d]etectives also monitored the transaction by visual and audio surveillance." Preliminarily, we note that the statement appears to be true. The evidence reflected that the detectives conducted visual surveillance through binoculars and audio surveillance through the monitoring device.

But even assuming the affidavit wrongly implied that the controlled buy was recorded in some way, that information was

22-12693               Opinion of the Court                    9

not material to probable cause. *See Kapordelis*, 569 F.3d at 1309. Holt did not purport to rely on the content of any recording in the affidavit. And whether the exchange was recorded or not, Holt's own personal observations of the controlled buy provided a reasonable basis for a finding of probable cause, as we just explained. Floyd has not shown that, absent this misrepresentation, probable cause would have been lacking. *See Novaton*, 271 F.3d at 987.

Second, Floyd asserts that the affidavit intentionally or recklessly omitted information about visual obstacles between the church parking lot and the back door of the residence, which Floyd deemed to be material. But nothing suggests that Holt, in preparing the affidavit, either intentionally or recklessly omitted this information. Nor would this information have defeated probable cause. *See Kapordelis*, 569 F.3d at 1309. Both Butler and Holt testified that, despite the presence of trees and other objects in between, they had an unobstructed view through binoculars of the back door of the residence from their position in the church parking lot. The magistrate judge found that the officers were credible, and Floyd falls well short of showing that determination to be clearly erroneous. *See White*, 593 F.3d at 1202.

For these reasons, we affirm the district court's denial of the motion to suppress.

**AFFIRMED.**